IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD ATIBA | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:26-cv-2299 |
| | § | |
| v. | § | JURY |
| | § | |
| WEATHERFORD US LP | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, RICHARD ATIBA ("Atiba" or "Plaintiff"), Plaintiff in the above styled and numbered cause, and files this Plaintiff's Original Complaint, complaining of WEATHERFORD US LP ("Weatherford" or "Defendant"), and for cause of action, would show as follows:

### I. INTRODUCTION

1. This employment discrimination action seeks back pay, front pay, compensatory damages, punitive/liquidated damages, attorneys' fees, expert witness fees, taxable costs of court, and pre-judgment and post-judgment interest for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C §§ 2000e *et seq.* (Title VII) and 42 U.S.C. § 1981. Plaintiff Richard Atiba was discriminated against because of his race and color. In addition, he was terminated in retaliation after he engaged in a protected activity.

### II. PARTIES

2. Plaintiff Atiba is a citizen of the United States and is currently a resident of Brazoria County, Texas.

3.      Defendant Weatherford is a Texas Limited Partnership. Its primary office is located at 2000 Saint James Place, Houston, Texas 77056. It may be served with summons by serving its registered agent CT Corp. System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

### III. JURISDICTION AND VENUE

4.      This action is brought under Title VII and § 1981. Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

5.      The discrimination and retaliation were committed within the jurisdiction of the United States District Court for the Southern District of Texas, Houston Division, as all of the acts and conduct charged herein occurred in this District. Specifically, at Weatherford's office located in Houston, Texas. *See* 28 U.S.C. § 1391(b)(2).

### IV. FACTS

6.      Atiba was hired by Weatherford in April 2023.

7.      Weatherford is an "employer" as that term is defined in 42 U.S.C. § 2000e(b).

8.      Atiba worked at Weatherford's Houston, Harris County, Texas office location.

9.      Atiba's title was Sales and Operations Planner (S&OP Planner) and at all times applicable hereto, he was an exemplary employee, fully capable of performing his job.

10.     Atiba is an African-American (Black) man.

11.     In September 2025, Atiba was assigned a new manager named Todd Newell (white male).

12.     Atiba immediately noticed a distanced attitude from Newell – something Newell did not exhibit to the other employees on Atiba's team: Craig Pickett (white male) and Eddie Thomas (white male).

13.     With the arrival of Newell, Atiba was the only Black employee in the workgroup.

Page **2** of **9**

14. Although he had worked for Weatherford as an S&OP Planner for more than two years without incident or performance complaint, Newell almost immediately accused Atiba of poor work performance, something Atiba denies.

15. The complaints made by Newell were either (i) false; or (ii) based on misunderstandings by Newell, something Atiba would try to correct. Newell was not interested in Atiba's explanations.

16. Atiba's white counterparts did not face the same scrutiny or complaints.

17. In October 2025, Newell put Atiba on a Performance Improvement Plan (PIP).

18. PIPs are well known to be a device for an employer wishing to manufacture false and pretextual reasons to terminate an employee.

19. Despite the pretextual PIP, Atiba met or exceeded all performance improvement goals presented to him.

20. Atiba again noticed that his white counterparts were not placed on a PIP despite having the same work performance.

21. On December 1, 2025, Atiba submitted a formal complaint of discrimination. The complaint was submitted to Weatherford managers Joe Isaac, Kristin Ruzicka, and HR.

22. In the complaint, Atiba reported and opposed harassment and disparate treatment by Newell. He expressly noted that he was being treated less fairly than his white counterparts ("inconsistent treatment relative to peers"). Atiba also reported hostile work environment and exclusion from critical discussions at work.

23. In addition to reporting (opposing) the discrimination and disparate treatment, Atiba requested a formal HR review which was never done.

24. Atiba's report was met with hostility.

25.     He was immediately approached by HR representative Fran Tibbles who insisted Atiba discuss the complaint with his verbally.

26.     Atiba respectfully requested the conversation be carried out in writing for documentary purposes. He was also very concerned about his colleagues overhearing the conversation and retaliating against him or putting him at risk for retaliation.

27.     Tibbles flatly refused to document any of Atiba's concerns. During the meeting, Tibbles falsely accused Atiba of "refusing to cooperate."

28.     Weatherford has no policy requiring discrimination complaints to be handled verbally instead of in writing.

29.     Tibbles did say, "and that's okay," in response to Atiba's decision only discuss his discrimination complaint in writing.

30.     Tibbles never did follow through with the promise to discuss the complaint in writing.

31.     Instead, on December 3, 2025, just two days after Atiba engaged in his protected activity, Atiba was terminated.

32.     Atiba was "perp walked" from the Weatherford building and not even permitted to retrieve his belongings from his desk.

33.     At the termination meeting, Atiba was handed a "Corrective Action" termination letter that expressly noted "Richard wrote an email on 12/1/2025 to his HRBP [Tibbles] regarding concerns he had with Weatherford and his work environment."

34.     The termination letter, immediately following references to his report of discrimination, stated that "Richard's conduct has not been respectful…"

35.     Weatherford directly linked Atiba's protected activity to his termination.

Page **4** of **9**

36.     Atiba prepared and filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission and received a "right to sue" letter thus satisfying all administrative prerequisites.

37.     As a direct and proximate result of Defendant's discrimination and retaliation, Atiba suffered damages in the form of lost pay and benefits (front and back), damage to his reputation, mental anguish, and loss of opportunity.

38.     Weatherford was aware of the protections afforded under Title VII and § 1981. Despite this knowledge, Weatherford engaged in a discriminatory practice (or practices) with malice or reckless indifference to the federally protected rights of Atiba.

## V. CAUSES OF ACTION

### RACE DISCRIMINATION UNDER TITLE VII (COUNT I)

39.     Atiba incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

40.     Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., makes it an "unlawful employment practice" to "discriminate against any individual ... because of such individual's race, color, religion, sex, or national origin."

41.     Defendant committed an unlawful employment practice when they discriminated against Atiba because of his African-American race or when his race was a motivating factor in its decision to discriminate.

42.     The discrimination included: (i) favoring non-Black employees in treatment at work and promotional opportunity; (ii) subjecting Atiba, the only Black employee in the workgroup to intense and inappropriate scrutiny, including a false and pretextual PIP; (iii) accusing Atiba of being disrespectful after he raised valid concerns about discrimination; (iv) excluding

Atiba from work events and other work opportunities because of his race; and (v) terminating his employment.

43.    Atiba suffered damages as a result of Defendant's unlawful employment practice(s).

44.    Defendant's violation was willful or done with reckless indifference to the federally protected rights of Atiba.

## COLOR DISCRIMINATION UNDER TITLE VII (COUNT II)

45.    Atiba incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

46.    Defendant committed an unlawful employment practice when they discriminated against Atiba because of his color (Black) or when his color was a motivating factor in its decision to discriminate.

47.    The discrimination included: (i) favoring non-Black employees in treatment at work and promotional opportunity; (ii) subjecting Atiba, the only Black employee in the workgroup to intense and inappropriate scrutiny, including a false and pretextual PIP; (iii) accusing Atiba of being disrespectful after he raised valid concerns about discrimination; (iv) excluding Atiba from work events and other work opportunities because of his race; and (v) termination.

48.    Atiba suffered damages as a result of Defendant's unlawful employment practice(s).

49.    Defendant's violation was willful or done with reckless indifference to the federally protected rights of Atiba.

**RETALIATION (COUNT III)**

50.    Atiba incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

51.    Atiba was terminated in violation Title VII's anti-retaliation protections when he was terminated for engaging in a protected activity. Specifically, when the reported, opposed, and complained of unlawful discrimination in good faith. In addition, Atiba attempted to participate in an investigation but Defendant refused to investigate, instead preferring to retaliate against Atiba.

**§ 1981 VIOLATION (COUNT IV)**

52.    Atiba incorporates by reference all of the foregoing allegations in each of the paragraphs above as fully set forth herein.

53.    Atiba's claim for recovery under Section 1981 is based upon 42 U.S.C. § 1981, which provides that all persons within the United States shall have the same right to make and enforce contracts and to the full and equal benefit of all laws as is enjoyed by white citizens.

54.    This law entitles a person of color to equal opportunity and treatment in employment.

55.    When an employer acts adversely against a person of color because of that person's race, the law has been violated and the person of color may file suit and recover damages.

56.    A person is also entitled to file suit and recover damages under Section 1981 for retaliation for opposing or reporting violations of Section 1981 or for opposing or reporting any practice made unlawful by Title VII. *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1209-10 (5th Cir. 2021).

57.    Atiba belongs to a protected group and experienced adverse treatment at work because of his race and color.

58. The treatment and improper conduct was unwelcomed and offensive to Atiba.

59. The conduct affected a term, condition, or privilege of employment at Weatherford.

60. Defendant not only treated Atiba differently in violation of Section 1981, it retaliated against him in violation of Section 1981.

61. Atiba suffered damages as a result of Defendant's violation.

62. As to all Counts, where acts were committed by employees of the Defendant, the Defendant is liable under *respondeat superior*.

## VI. DAMAGES & OTHER RELIEF

63. As a result of Defendant's conduct, Atiba seeks the following relief: (1) back pay, including, but not limited to, his salary, bonuses, and benefits; (2) reinstatement, or if reinstatement is deemed not feasible, front pay, including, but not limited to, his salary, bonuses, and benefits; (3) costs of court, expert witness fees, and attorneys' fees; (4) liquidated and/or punitive damages; and (5) other compensatory damages.

64. Additionally, because Defendant's actions were committed maliciously, willfully, and/or with reckless indifference to Atiba's state and federally protected rights, Atiba is entitled to recover punitive, liquidated, and/or exemplary damages in an amount sufficient to deter Defendant and others similarly situated from this conduct in the future.

65. Atiba is entitled to declaratory relief that a violation has occurred.

66. Atiba is also entitled to equitable relief in the form of an injunction against future discrimination or retaliation.

## VII. JURY DEMAND

67. Atiba requests a trial by jury on issues triable by a jury in this case.

Page **8** of **9**

## VIII. PRAYER

WHEREFORE, Plaintiff respectfully prays that upon final trial hereof, this Court enter judgment in favor of Plaintiff; grant him appropriate back pay, including, but not limited to, his salary, bonuses, and benefits; front pay, including his salary, bonuses, and benefits; compensatory damages; punitive and/or liquidated damages as allowed by law; reasonable attorneys' fees both for the trial of this cause and any and all appeals as may be necessary; all expert witness fees incurred in the preparation and prosecution of this action; pre-judgment and post-judgment interest as allowed by law; taxable court costs; and any such additional and further relief that this Court may deem just and proper.

Dated: March 23, 2026

Respectfully submitted,

THE VERDE LAW FIRM, PLLC

/s/ Joshua A. Verde
Joshua A. Verde
Attorney-In-Charge
State Bar No. 24077590
Fed. ID No. 1760723
12012 Wickchester Ln, Suite 330
Houston, TX 77079
Phone: 713-909-4347
Fax: 713-588-2431
josh@verde-law.com

ATTORNEYS FOR PLAINTIFF